**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| RML Health Providers Ltd Partnership, dba RML Specialty Hospital, an Illinois limited partnership, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | No. |
| v. | ) ) | |
| United Healthcare Insurance Company, a Connecticut corporation, | ) ) ) | |
| Defendant. | ) | |

<u>COMPLAINT</u>

RML Health Providers Ltd Partnership, dba RML Specialty Hospital, an Illinois limited partnership, by its attorneys, David Moon, Jennifer Powers, and Leonard Saphire-Bernstein, of Powers & Moon LLC, complains against United Healthcare Insurance Company, a Connecticut corporation, as follows:

**<u>THE PARTIES</u>**

1.      The Plaintiff, RML Health Providers Ltd Partnership, dba RML Specialty Hospital ("RML" or the "Hospital"), is an Illinois limited partnership which is registered with the Illinois Department of Public Health as a long term acute care hospital, or "LTCH".

2.      Plaintiff RML is an Illinois limited partnership with its principal place of business in Illinois. All services which are relevant to this complaint were provided in

Illinois, within the jurisdictional area of the United States District Court for the Northern District of Illinois.

3.     Defendant United Healthcare Insurance Company ("UHC") is a Connecticut corporation with its principal place of business in Connecticut.

## JURISDICTION AND VENUE

4.      This is a civil action that falls within the Court's jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship). RML alleges damages of $325,689.78, plus interest and costs, well in excess of the jurisdictional amount.

5.     Since the plaintiff hospital is located within the Northern District of Illinois, all services were provided here, and the agreement was breached by non-payment here, venue is proper in the Northern district of Illinois. 28 U.S.C. §1441(a).

## GENERAL ALLEGATIONS

6.     At all times relevant hereto, seven individuals (hereinafter, "the patients") presented to RML for hospital and medical services on various dates, as set forth more fully below.  On information and belief, at some time prior to their admission dates, each of these patients was eligible for Medicare benefits and eligible to purchase supplemental policies known as "Medigap" policies or "Medicare Supplemental" policies as specified by statutes and regulations adopted by the states where said policies were in fact purchased.

7.     On information and belief, one of the patients purchased a type "F" policy in Indiana, one patient purchased a type "C" policy in Illinois, and the other five patients purchased type "F" policies in Illinois (hereinafter, "the Policies"), all of which were offered for sale by the defendant to eligible individuals, and in so doing the patients

contracted with the defendant for the provision of insurance benefits as specified by the Policies.

8.      On information and belief, each Policy agreement remained in force and effect during all times relevant to the allegations of this Complaint.

9.      The Policies provided health insurance benefits pursuant to their terms, as a supplement to benefits provided to eligible individuals under the federal Medicare program. By virtue of federal laws, and in particular, 42 U.S.C. 1395ss, the Policies were created under, and controlled by, statutory provisions of Indiana law in the case of Patient JN, and in particular, Indiana Code ["IC"] 27-8-13-10, or statutory provisions of Illinois law in the case of the other six patients, and in particular 215 ILCS 5/363.

10.      The State of Indiana, pursuant to IC 27-8-13-10, has issued and implemented regulations concerning the sale of such Medicare supplemental policies.  Insurers, pursuant to Indiana law, must conform such Medicare supplemental policies to the terms specified by Indiana law and Indiana regulations. See 760 Indiana Administrative Code ["IAC"] 3-1-1 *et seq*., and especially 760 IAC 3-14-1 and 760 IAC 3-6-1.1.

11.      The State of Illinois Department of Insurance, pursuant to 215 ILCS 5/363, has issued and implemented regulations concerning the sale of such Medicare supplemental policies.  Insurers, pursuant to Illinois law, must conform such Medicare supplemental policies to the terms specified by Illinois law and Illinois regulations.  See Illinois Administrative Code, Title 50, Chapter I, Subchapter z, Part 2008, §§ 2008.64 and 2008.67

12.      The defendant, in cooperation with its partners, namely, AARP and AARP-S, sold, among other policies, a type "F" policy as a Medicare Supplemental policy, whose terms are in conformance with Indiana and Illinois statutes and regulations, and a type "C" policy, whose terms are in conformance with Illinois statutes and regulations.

**PATIENT "JN"**

13.     On or about December 9, 2010, Patient JN was admitted to the plaintiff, RML, for hospital services provided by the plaintiff in accordance with its corporate charter and the laws of the State of Illinois.

14.     Patient JN remained in RML to and through October 5, 2011, receiving medical care which was eligible for reimbursement under the Medicare program.

15.     Pursuant to its terms, Medicare paid all Medicare Part A-eligible expenses for Patient JN from the date of admission through March 3, 2011.  After that date, which was the last day payable before Medicare Part A benefits "exhausted," Patient JN remained at RML, which incurred expenses for the provision of his care through October 5, 2011.

16.     For the medical services provided by RML to Patient JN from March 4, 2011 through October 5, 2011 (the "Post-Exhaust Services"), RML re-billed Medicare under Part B, to obtain payment for the Part B services.

**PATIENT "KW"**

17.     On or about May 13, 2011, Patient KW was admitted to the plaintiff, RML, for hospital services provided by the plaintiff in accordance with its corporate charter and the laws of the State of Illinois.

18.     Patient KW remained in RML to and through August 30, 2011, receiving medical care which was eligible for reimbursement under the Medicare program.

19.     Pursuant to its terms, Medicare paid all Medicare Part A-eligible expenses for patient KW from the date of admission to and through August 10, 2011.  After that date, which was the last day payable before Medicare Part A benefits "exhausted," Patient KW

remained at RML, which incurred expenses for the provision of his care through August 30, 2011.

20.     For the medical services provided by RML to Patient KW from August 11, 2011 through August 30, 2011 (the "Post-Exhaust Services"), RML re-billed Medicare under Part B, to obtain payment for the Part B services.

## PATIENT "NM"

21.     On or about November 17, 2011, Patient NM was admitted to the plaintiff, RML, for hospital services provided by the plaintiff in accordance with its corporate charter and the laws of the State of Illinois.

22.     Patient NM remained in RML to and through January 6, 2012, receiving medical care which was eligible for reimbursement under the Medicare program.

23.     Pursuant to its terms, Medicare paid all Medicare Part A-eligible expenses for patient NM from the date of admission to and through January 3, 2012.  After that date, which was the last day payable before Medicare Part A benefits "exhausted," Patient NM remained at RML, which incurred expenses for the provision of her care through January 6, 2012.

24.     For the medical services provided by RML to Patient NM from January 4, 2011 through January 6, 2012 (the "Post-Exhaust Services"), RML re-billed Medicare under Part B, to obtain payment for the Part B services.

## PATIENT "JB"

25.     On or about April 12, 2012, Patient JB was admitted to the plaintiff, RML, for hospital services provided by the plaintiff in accordance with its corporate charter and the laws of the State of Illinois.

26.     Patient JB remained in RML to and through May 30, 2012, receiving medical care which was eligible for reimbursement under the Medicare program.

27.     Pursuant to its terms, Medicare paid all Medicare Part A-eligible expenses for patient JB from the date of admission to and through May 5, 2012. After that date, which was the last day payable before Medicare Part A benefits "exhausted," Patient JB remained at RML, which incurred expenses for the provision of his care through May 30, 2012.

28.     For the medical services provided by RML to Patient JB from May 6, 2012 through May 30, 2012 (the "Post-Exhaust Services"), RML re-billed Medicare under Part B, to obtain payment for the Part B services.

## PATIENT "JM"

29.     On or about Februray 22, 2013, Patient JM was admitted to the plaintiff, RML, for hospital services provided by the plaintiff in accordance with its corporate charter and the laws of the State of Illinois.

30.     Patient JM remained in RML to and through May 29, 2013, receiving medical care which was eligible for reimbursement under the Medicare program.

31.     Pursuant to its terms, Medicare paid all Medicare Part A-eligible expenses for patient JM from the date of admission to and through March 19, 2013. After that date, which was the last day payable before Medicare Part A benefits "exhausted," Patient JM remained at RML, which incurred expenses for the provision of her care through May 29, 2013.

32.     For the medical services provided by RML to Patient JM from March 20, 2013 through May 29, 2013 (the "Post-Exhaust Services"), RML re-billed Medicare under Part B, to obtain payment for the Part B services.

**PATIENT "HO"**

33.      On or about or about April 9, 2013, Patient HO was admitted to the plaintiff, RML, for hospital services provided by the plaintiff in accordance with its corporate charter and the laws of the State of Illinois.

34.      Patient HO remained in RML to and through June 7, 2013, receiving medical care which was eligible for reimbursement under the Medicare program.

35.      Pursuant to its terms, Medicare paid all Medicare Part A-eligible expenses for patient HO from the date of admission to and through May 2, 2013.  After that date, which was the last day payable before Medicare Part A benefits "exhausted," Patient HO remained at RML, which incurred expenses for the provision of her care through June 7, 2013.

36.      For the medical services provided by RML to Patient HO from May 3, 2013 through June 7, 2013 (the "Post-Exhaust Services"), RML re-billed Medicare under Part B, to obtain payment for the Part B services.

**PATIENT "MH"**

37.      On or about July 25, 2013, Patient MH was admitted to the plaintiff, RML, for hospital services provided by the plaintiff in accordance with its corporate charter and the laws of the State of Illinois.

38.      Patient MH remained in RML to and through September 26, 2013, receiving medical care which was eligible for reimbursement under the Medicare program.

39.      Pursuant to its terms, Medicare paid all Medicare Part A-eligible expenses for patient MH from the date of admission to and through August 13, 2013.  After that date, which was the last day payable before Medicare Part A benefits "exhausted," Patient MH

remained at RML, which incurred expenses for the provision of his  care through September 26, 2013.

40.      For the medical services provided by RML to Patient MH from August 14, 2013 through September 26, 2013 (the "Post-Exhaust Services"), RML re-billed Medicare under Part B, to obtain payment for the Part B services.

## GENERAL ALLEGATIONS – ALL PATIENTS

41.      Medicare Part A generally covers inpatient care in hospitals and Medicare Part B generally covers doctors' services and outpatient care.  However, Part B also can cover certain inpatient services, such as certain diagnostic testing; physical occupational and speech therapy; clinical diagnostic laboratory tests; drugs incident to covered radiology and other diagnostic tests; hemodialysis.  Inpatient services not covered by Part B include room and board/nursing care; all pharmaceuticals other than drugs incident to covered radiology and other diagnostic tests; respiratory and general services with a three digit Revenue Code beginning "76".

42.      When RML re-billed Medicare for payment under Part B for the above referenced patients, RML clearly indicated those services that are non-covered under Part B, such as room and board, pharmaceuticals and respiratory.

43.      Indiana regulations (760 I.A.C. 3-6.1-1) provide for payment after exhaustion of Medicare Part A days, as follows:

- **(1)**  Coverage of Part A Medicare eligible expenses for hospitalization to the extent not covered by Medicare from the sixty-first day through the ninetieth day in any Medicare benefit period.
- **(2)**  …
- **(3)**  Upon exhaustion of the Medicare hospital inpatient coverage, including the lifetime reserve days, <u>coverage of one hundred percent (100%) of the Medicare Part A eligible expenses for hospitalization paid at the applicable prospective payment system (PPS) rate</u>, or other appropriate standard of payment, subject to a lifetime

maximum benefit of an additional three hundred sixty-five (365) days. The provider shall accept the issuer's payment as payment in full and may not bill the insured for any balance.

\*\*\*

(d) The following additional benefits shall be included in Medicare supplement benefit Plans B, C, D, F, F with high deductible, G, M, and N as provided by 760 IAC 3-7.1. The standard for additional benefits are as follows:

- (1) Medicare Part A deductible, coverage for one hundred percent (100%) of the Medicare Part A inpatient hospital deductible amount per benefit period.
- (2) Medicare Part A deductible, coverage for fifty percent (50%) of the Medicare Part A inpatient hospital deductible amount per benefit period.
- (3) ….
- (4) Medicare Part B deductible, coverage for one hundred percent (100%) of the Medicare Part B deductible amount per calendar year regardless of hospital confinement.
- (5) One hundred percent (100%) of the Medicare Part B excess charges, coverage for all of the difference between the actual Medicare Part B charges as billed, not to exceed any charge limitation established by the Medicare program or state law, and the Medicare-approved Part B charge.

(Emphasis added).

44.     Illinois regulations (50 Ill. Adm. Code.2008.64) provide for payment after exhaustion of Medicare Part A days, as follows:

- 1) Coverage of Part A Medicare eligible expenses for hospitalization to the extent not covered by Medicare from the 61st day through the 90th day in any Medicare benefit period;
- 2) …
- 3) Upon exhaustion of the Medicare hospital inpatient coverage, including the lifetime reserve days, coverage of 100% of the Medicare Part A eligible expenses for hospitalization paid at the applicable prospective payment system (PPS) rate, or other appropriate Medicare standard of payment, subject to a lifetime maximum benefit of an additional 365 days. The provider shall accept the issuer's payment as payment in full and may not bill the insured for any balance;

...

c) Standards for Additional Benefits. The following additional benefits shall be included in Medicare supplement benefit Plans B, C, D, F, F with High Deductible, G, M, and N as provided by Section 2008.67 of this Part.

- 1) Medicare Part A Deductible: Coverage for 100% of the Medicare Part A inpatient hospital deductible amount per benefit period.

- 2) Medicare Part A Deductible: Coverage for 50% of the Medicare Part A inpatient hospital deductible amount per benefit period.
- 3) …
- 4) Medicare Part B Deductible: Coverage for 100% of the Medicare Part B deductible amount per calendar year regardless of hospital confinement.
- 5) One Hundred Percent of the Medicare Part B Excess Charges: Coverage for all of the difference between the actual Medicare Part B charges as billed, not to exceed any charge limitation established by the Medicare program or state law, and the Medicare-approved Part B charge.

(Emphasis added).

45.     Essentially, whether issued in Indiana or Illinois, the Medicare supplemental policy is required to provide for payment of Medicare-eligible expenses, in the words of defendant's own summary on its website:

> 2 NOTICE: When your Medicare Part A hospital benefits are exhausted, the insurer stands in place of Medicare and will pay whatever amount Medicare would have paid for up to an additional 365 days as provided in the policy's "Core Benefits."

46.     The concept is clear.  The defendant's obligation is to pay the deductibles and the co-insurance payments as stated, and the amount Medicare "would have paid" if the patient's hospital inpatient coverage (Part A coverage) had not "exhausted."

47.     For example, at the time that Patient JN exhausted his Part A benefits, Medicare had begun paying the "high cost outlier" rate, due to the patient's diagnosis and treatment and the length of his stay.  Defendant's obligation was to pay the remainder of the stay at the Medicare Part A high cost outlier rate.

48.     Following RML's submissions of the billings for Post-Exhaust Services to Medicare for payment under Part B for each of the above patients, Medicare issued payments to RML for the Part B services.  Medicare also caused to be issued remittance advice forms to RML and defendant depicting the payments made under Part B.  The remittance advice forms indicated the Part A services that are not covered, including each and every service previously identified by RML as non-covered under Part B in its

billing to Medicare.  The remittance advice forms from the Medicare intermediary assigned no DRG to any of the re-billing, due to Medicare reviewing the re-submitted bills for Part B benefits only.  The remittance advice forms all indicate claim adjustment amounts of zero.

49.     Rather than paying the amount that Medicare would have paid, had the above patients' Part A coverage not exhausted, as required by their policies and applicable state laws, the defendant has developed its own payment methodology, which does not compensate RML at the amounts Medicare would have paid had the Patients' Part A coverage not exhausted.

50.     Since the defendant failed and refuses to pay RML the amount Medicare would have paid had the Patients' Part A coverage not exhausted, defendant is in breach of the insurance policies at issue, and defendant is in violation of Indiana and Illinois law.

### PAYMENT ANALYSIS – PATIENT "JN"

51.     RML's charges for services rendered to JN from the admit date of December 9, 2010 through the Part A Exhaust date of March 3, 2011 totaled $406,762.88 ($4,785.45 per day average), and the amount RML was paid for those services, including the Part A co-pay paid by the defendant, totaled $119,206.41, averaging a payment amount of $1,402.43 per day for the 85 days.  RML's charges for the Post-Exhaust Services totaled $971,017.70 ($4,516.36 per day average), but the amount RML was paid, and defendant attempts to justify, was $89,837.55 for an average $417.85 for the 215 days of Post-Exhaust Services.  Defendant's unique approach to calculating benefits due under the policy clearly does not pay for the Post-Exhaust Services at the amount that Medicare would have paid, had Patient JN's Part A benefits not exhausted.  This has resulted in an underpayment of $191,466.84, the amount sought in this action for services rendered to Patient JN.

52.     The amount Medicare would have paid, had patient JN's Part A coverage not exhausted, was $400,510.80 for the entire length of stay.  That amount, minus the amount Medicare paid for Part A services pre-exhaust of $78,355.41, minus the amount paid by Medicare under Part B for Post-Exhaust Services of $53,023.76 minus the amount paid by defendant to date of $77,664.79 equals $191,466.84.

53.     RML has demanded payment of the unpaid amount of $191,466.84, but the defendant  has refused and failed to pay the amount due and owing.

## PAYMENT ANALYSIS – PATIENT "KW"

54.     RML's charges for services rendered to KW from the admit date of May 13, 2011 through the Part A Exhaust date of August 10, 2011 totaled $429,540.76 ($4,772.68 per day average), and the amount RML was paid for those services, including the Part A co-pay paid by the defendant, totaled $125,784.66, averaging a payment amount of $1,397.61 per day for the 90 days.  RML's charges for the Post-Exhaust Services totaled $97,357.93 ($5,124.10 per day average), but the amount RML was paid, and defendant attempts to justify, was $22,013.42 for an average $1,158.60 for the 19 days of Post-Exhaust Services.  Defendant's unique approach to calculating benefits due under the policy clearly does not pay for the Post-Exhaust Services at the amount that Medicare would have paid, had Patient KW's Part A benefits not exhausted.  This has resulted in an underpayment of $6,103.56, the amount sought in this action for services rendered to Patient KW.

55.     The amount Medicare would have paid, had patient KW's Part A coverage not exhausted, was $153,901.64 for the entire length of stay.  That amount, minus the amount Medicare paid for Part A services pre-exhaust of $100,880.66, minus the amount paid by Medicare under Part B for Post-Exhaust Services of $1,234.19 minus the amount paid by defendant to date of $45,683.23 equals $6,103.56.

56.     RML has demanded payment of the unpaid amount of $6,103.56, but the defendant  has refused and failed to pay the amount due and owing.

57.

## PAYMENT ANALYSIS – PATIENT "NM"

58.     RML's charges for services rendered to NM from the admit date of November 17, 2011 through the Part A Exhaust date of January 3, 2012 totaled $199,916.47 ($4,164.93 per day average), and the amount RML was paid for those services, including the Part A co-pay paid by the defendant, totaled $52,989.89, averaging a payment amount of $1,103.96 per day for the 48 days.  RML's charges for the Post-Exhaust Services totaled $10,118.15 ($5,059.08 per day average), but the amount RML was paid, and defendant attempts to justify, was $1,769.01 for an average $884.51 for the 2 days of Post-Exhaust Services.  Defendant's unique approach to calculating benefits due under the policy clearly does not pay for the Post-Exhaust Services at the amount that Medicare would have paid, had Patient NM's Part A benefits not exhausted.  This has resulted in an underpayment of $1,118.24, the amount sought in this action for services rendered to Patient NM.

59.     The amount Medicare would have paid, had patient NM's Part A coverage not exhausted, was $55,912.01 for the entire length of stay.  That amount, minus the amount Medicare paid for Part A services pre-exhaust of $32,011.89, minus the amount paid by Medicare under Part B for Post-Exhaust Services of $379.01 minus the amount paid by defendant to date of $22,368.00 equals $1,153.11.

60.     RML has demanded payment of the unpaid amount of $1,153.11, but the defendant  has refused and failed to pay the amount due and owing.

## PAYMENT ANALYSIS – PATIENT "JB"

61.    RML's charges for services rendered to JB from the admit date of April 12, 2012 through the Part A Exhaust date of May 5, 2012 totaled $110,335.83 ($4,597.33 per day average), and the amount RML was paid for those services, including the Part A co-pay paid by the defendant, totaled $43,803.32, averaging a payment amount of $1,825.14 per day for the 24 days.  RML's charges for the Post-Exhaust Services totaled $158,645.59 ($6,610.23 per day average), but the amount RML was paid, and defendant attempts to justify, was $17,738.32 for an average $739.10 for the 24 days of Post-Exhaust Services.  Defendant's unique approach to calculating benefits due under the policy clearly does not pay for the Post-Exhaust Services at the amount that Medicare would have paid, had Patient JB's Part A benefits not exhausted.  This has resulted in an underpayment of $27,823.66, the amount sought in this action for services rendered to Patient JB.

62.    The amount Medicare would have paid, had patient JB's Part A coverage not exhausted, was $89,365.30 for the entire length of stay.  That amount, minus the amount Medicare paid for Part A services pre-exhaust of $29,931.32, minus the amount paid by Medicare under Part B for Post-Exhaust Services of $6,288.78 minus the amount paid by defendant to date of $25,321.54 equals $27,823.66.

63.    RML has demanded payment of the unpaid amount of $27,823.66, but the defendant  has refused and failed to pay the amount due and owing.

**PAYMENT ANALYSIS – PATIENT "JM"**

64.     RML's charges for services rendered to JM from the admit date of February 22, 2013 through the Part A Exhaust date of March 19, 2013 totaled $148,367.96 ($5,706.46 per day average), and the amount RML was paid for those services, including the Part A co-pay paid by the defendant, totaled $55,786.35, averaging a payment amount of $2,145.63 per day for the 26 days.  RML's charges for the Post-Exhaust Services totaled $394,972.81 ($5,642.47 per day average), but the amount RML was paid, and defendant attempts to justify, was $56,225.42 for an average $803.22 for the 70 days of Post-Exhaust Services.  Defendant's unique approach to calculating benefits due under the policy clearly does not pay for the Post-Exhaust Services at the amount that Medicare would have paid, had Patient JM's Part A benefits not exhausted.  This has resulted in an underpayment of $59,375.63, the amount sought in this action for services rendered to Patient JM.

65.     The amount Medicare would have paid, had patient JM's Part A coverage not exhausted, was $171,387.40 for the entire length of stay.  That amount, minus the amount Medicare paid for Part A services pre-exhaust of $40,394.35, minus the amount paid by Medicare under Part B for Post-Exhaust Services of $16,829.13 minus the amount paid by defendant to date of $54,788.29 equals $59,375.63.

66.     RML has demanded payment of the unpaid amount of $59,375.63, but the defendant  has refused and failed to pay the amount due and owing.

**PAYMENT ANALYSIS – PATIENT "HO"**

67.     RML's charges for services rendered to HO from the admit date of April 9, 2013 through the Part A Exhaust date of May 2, 2013 totaled $123,952.00 ($5,164.67 per day

average), and the amount RML was paid for those services, including the Part A co-pay paid by the defendant, totaled $45,957.99, averaging a payment amount of $1,914.92 per day for the 24 days. RML's charges for the Post-Exhaust Services totaled $185,670.86 ($5,304.88 per day average), but the amount RML was paid, and defendant attempts to justify, was $26,210.45 for an average $748.87 for the 35 days of Post-Exhaust Services. Defendant's unique approach to calculating benefits due under the policy clearly does not pay for the Post-Exhaust Services at the amount that Medicare would have paid, had Patient HO's Part A benefits not exhausted. This has resulted in an underpayment of $25,032.47, the amount sought in this action for services rendered to Patient HO.

68.     The amount Medicare would have paid, had patient HO's Part A coverage not exhausted, was $97,200.91 for the entire length of stay. That amount, minus the amount Medicare paid for Part A services pre-exhaust of $31,749.99, minus the amount paid by Medicare under Part B for Post-Exhaust Services of $5,332.03 minus the amount paid by defendant to date of $35,086.42 equals $25,032.47.

69.     RML has demanded payment of the unpaid amount of $25,032.47, but the defendant  has refused and failed to pay the amount due and owing.

**PAYMENT ANALYSIS – PATIENT "MH"**

70.     RML's charges for services rendered to MH from the admit date of July 25, 2013 through the Part A Exhaust date of August 13, 2013 totaled $91,658.42 ($4,582.92 per day average), and the amount RML was paid for those services, including the Part A co-pay paid by the defendant, totaled $34,011.10, averaging a payment amount of $1,700.56 per day for the 20 days. RML's charges for the Post-Exhaust Services totaled $201,585.43 ($4,688.03 per day average), but the amount RML was paid, and defendant attempts to justify, was $34,948.48 for an average $812.76 for the 43 days of

Post-Exhaust Services. Defendant's unique approach to calculating benefits due under the policy clearly does not pay for the Post-Exhaust Services at the amount that Medicare would have paid, had Patient MH's Part A benefits not exhausted. This has resulted in an underpayment of $14,734.51, the amount sought in this action for services rendered to Patient MH.

71.     The amount Medicare would have paid, had patient MH's Part A coverage not exhausted, was $83,694.09 for the entire length of stay. That amount, minus the amount Medicare paid for Part A services pre-exhaust of $22,171.10, minus the amount paid by Medicare under Part B for Post-Exhaust Services of $4,527.31 minus the amount paid by defendant to date of $42,261.17 equals $14,734.51.

72.     RML has demanded payment of the unpaid amount of $14,734.51, but the defendant has refused and failed to pay the amount due and owing.

## COUNT I – BREACH OF CONTRACT

73.     RML re-alleges and incorporates each of the above paragraphs as though fully set forth herein.

74.     The Patients assigned in writing to RML all insurance benefits to which each is entitled.

75.     As assignee of the Patients' insurance benefits, RML may stand in the shoes of each Patient with respect to insisting upon the proper payment of claims for services rendered by RML to the Patients.

76.     The Policies are written contracts which exist between each Patient and the defendant.

77.     RML and the Patients have performed all of the terms and conditions of the Policies, except to the extent the actions and omissions of defendant frustrated and excused such performance.

78.     Defendant has materially breached the Policies by not paying RML the unpaid Medicare allowable amounts for the inpatient services rendered to the Patients.

79.     Defendant has failed and refused to fully pay RML these amounts due under the Policies, despite repeated demands for such payments by RML.

80.     As a direct and proximate result of defendant's breach of the Policies, RML has been damaged in the amount of $325,689.78, plus costs of suit and interest.

## COUNT II – DECLARATORY RELIEF

81.     RML re-alleges and incorporates each of the above paragraphs as though fully set forth herein.

82.     An actual controversy has now arisen and now exists between RML and defendant regarding their respective rights and duties under the Policies.

83.     The Policies obligate defendant to pay benefits that would have been paid by Medicare under Medicare Part A, had the Patients' Part A benefits not been exhausted, plus any deductibles and coinsurance amounts that would have been the Patients' responsibilities to pay.  Defendant contends, on the other hand, that it may deduct RML's billed charges (amounts that Medicare never would have paid since Medicare pays only a fraction of a provider's billed charges using a payment methodology that is not based upon a provider's actual charges) from sums defendant would have owed under the Policies for Part A benefits.

84.     RML seeks a judicial determination of the proper interpretation of the Policies, including without limitation that RML is entitled to be paid by defendant at the amounts applicable under Medicare Part A, if the Patients' Part A benefits had not been exhausted, plus any deductibles and coinsurance amounts that would have been the Patients' responsibilities to pay.

85.     A judicial declaration is therefore necessary and appropriate at this time to avoid damage to RML and future disputes between RML and defendant.

## COUNT III – BAD FAITH CLAIM BASED ON ILLINOIS INSURANCE CODE

86.     RML re-alleges and incorporates each of the above paragraphs as though fully set forth herein.

87.     The defendant's conduct as described above constitutes an unreasonable and vexatious failure to fulfill its post claim obligations, in violation of Section 155 of the Illinois Insurance Code.  215 ILCS 5/155.

88.     Further, the defendant knowingly misrepresented the provisions of the policies at issue and/or the obligations of defendant with respect to the policies at issue.

89.     Defendant is obligated to pay RML statutory penalties, attorney's fees, pre-judgment interest, and costs for its violations of Section 155 of the Illinois Insurance Code.

WHEREFORE, Plaintiff RML prays that this court enter judgment in its favor and against the defendant, in the amount of the unpaid benefits;  pre- and post-judgment interest; statutory penalties; attorney's fees; judicial declaration; costs and filing fees; and providing such other and further relief as the court may find just and equitable.


Respectfully submitted,


s/ Leonard Saphire-Bernstein
Attorney for the Plaintiff

Powers & Moon LLC
707 Lake Cook Rd.
Suite 102
Deerfield, IL 60015
(847) 412-1274